NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CAROLINE A.**, <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION**, <br><br> Defendant. | Civil Action No. 20-9742 (ZNQ) <br><br> **MEMORANDUM OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court on Plaintiff Caroline A.'s ("Plaintiff")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Plaintiff's request for supplemental security income benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. §§ 405(g) and 1383(c) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons below, the Court affirms the Commissioner's decision.

### I.      BACKGROUND

In this appeal, the Court addresses Plaintiff's three alleged errors warranting a remand or reversal of the Commissioner's final decision: *First*, did the Administrative Law Judge ("ALJ") commit error at Step Two by finding Plaintiff's shortness of breath, headaches, and anxiety to be

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

non-severe*? Second*, did the ALJ's mistaken belief that Plaintiff can walk up to two miles, instead of .2 miles, create harmful error? *Third*, does substantial evidence support the ALJ's evaluation of Dr. Sukhwinder Hundle's medical opinion? The Court begins with a brief background of the procedural posture and decision by the ALJ.[2]

### A. Procedural Posture

Plaintiff filed an application for supplemental security income benefits on May 5, 2016, alleging a disability onset date of March 13, 2016. (AR 159-64.) The Social Security Administration (the "Administration") denied the request both initially and on reconsideration. (*Id.* at 79-103.) Thereafter, Plaintiff requested a hearing (*id.* at 121-23), and the ALJ held that hearing on February 12, 2019 (*id.* at 28-55). The ALJ issued a decision in March 2019, finding Plaintiff was not disabled. (*Id.* at 15-25.) Plaintiff appealed, and the Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-6.) Plaintiff then initiated an appeal to this Court. (ECF No. 1.) Plaintiff filed her opening brief on May 10, 2021 (ECF No. 13); the Commissioner filed an opposition brief on June 24, 2021 (ECF No. 14); and Plaintiff filed a reply brief on July 9, 2021 (ECF No. 16).

### B. The ALJ's Decision

In his March 6, 2019 opinion, the ALJ determined that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 15-25.) The ALJ set forth the five-step process for determining whether an individual is disabled. (*Id.* at 16-17 (citing 20 C.F.R. § 416.920(a)).) At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity" since the disability onset date. (*Id.* at 17 (citing 20 C.F.R. § 416.971 *et seq*.).) At step two,

---

[2] The Administrative Record ("Record" or "AR") is available at ECF No. 8-1 through 8-10. The Court will reference the relevant page numbers in the Record and will not reference corresponding ECF page numbers within those files.

the ALJ found that Plaintiff suffered from several severe impairments, including "lumbar degenerative disc disease with history of compression fracture and myofascial pain syndrome." (*Id.* at 18-19 (citing 20 C.F.R. § 416.920(c)).) At step three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 19-20 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).) Before proceeding to step four, the ALJ concluded that Plaintiff had the residual functional capacity (RFC) to "perform light work" as the regulations define that term, with the added requirement of an option to wear a back brace. (Id. at 20-23 (citing 20 C.F.R. § 416.967(b)).) At the fourth step, the ALJ concluded that Plaintiff "is capable of performing past relevant work as a nurse supervisor." (Id. at 23 (citing 20 C.F.R. § 416.965).) As a result, the ALJ determined that Plaintiff was not disabled and did not proceed to step five. (Id. at 24 (citing 20 C.F.R. § 416.920(f)).)

This appeal concerns the ALJ's step-two and step-four determinations, as well as whether substantial evidence supports the ALJ's evaluation of Dr. Hundle's medical opinions. As to step two, the ALJ considered evidence of Plaintiff's impairments from headaches, anxiety, and shortness of breath, and concluded that those impairments were non-severe. First, in evaluating headaches and shortness of breath as physical impairments, the ALJ considered that Plaintiff denied headaches until 2018 before complaining of headaches for "the past 25 years," and concluded that they did not rise to a severity of being a medically determinable impairment. (AR 18.) Similarly with shortness of breath, the ALJ found it to be a relatively recent symptom of an unknown impairment with no evidence that it is expected to continue in the future. (*Id.*)

As to the mental impairment of anxiety, the ALJ assessed four criteria (the "paragraph B" criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 19

3

(citing 20 C.F.R. § 416.920(a)(d)). The ALJ found that Plaintiff either had no limitation or suffered from a mild limitation in each area. (AR 19.) In doing so, the ALJ considered the evidence presented by Plaintiff and the entire record. With respect to understanding, remembering, and applying information, the ALJ noted that Plaintiff secured a graduate degree after her alleged onset date. (*Id.*) Regarding interacting with others, the ALJ stated that Plaintiff presented no evidence that she had conflicts with others. (*Id.*) For the third factor of concentrating, persisting, or maintaining pace, in finding no limitation the ALJ noted that there is no coherent documentation outside of Plaintiff's self-reported complaints and no evidence that such symptoms are not merely side effects from her medication. (*Id.*) Finally, in discussing adapting or managing, the ALJ found mild limitations based on Plaintiff's difficulty in managing her mood during ongoing lumbar pain. (*Id.*)

Next, in the RFC analysis prior to step-four, the ALJ determined that Plaintiff could "perform light work as defined in 20 C.F.R. [§] 416.967(b)" with some exceptions and the option to wear a back brace. (*Id.* at 18.) As part of that finding, the ALJ noted that Plaintiff reported being (i) unable to go upstairs in her home or care for herself, (ii) able to walk two miles before needing rest, and (iii) unable to lift any objects.[3] (*Id.* at 20.) Plaintiff also testified to using a back brace eight hours per day. (*Id.* at 21.) The ALJ determined that Plaintiff's spinal impairments could reasonably cause many of her self-reported statements but that the intensity, persistence, and limiting effects of her impairment were not consistent with the medical evidence. (*Id.*) Further, the ALJ found Plaintiff's testimony was "inconsistent, exaggerated, not forthcoming, and ultimately

---

[3] As the Commissioner concedes, the ALJ was mistaken in believing Plaintiff reported being able to walk two miles. (Pl.'s Opp'n Br. 7, ECF No. 14 ("While the ALJ noted that Plaintiff indicated that she could walk two miles on a function report, it does appear that Plaintiff wrote .2 miles." (citing AR 20, 206)).)

4

unpersuasive." (*Id.* at 23.) Specifically, the ALJ noted that after her initial March 2016 hospital visit, Plaintiff retained normal lower extremity strength and sensation, was advised to "wean off her brace," and showed "significant improvement since her injury" by June 2016. (*Id.* at 21 (citing Exs. 3F, 5F, 6F).) Even after Plaintiff's purported fall in December 2016, the ALJ noted that she continued to receive treatment that reduced pain, improved physical capabilities, and built body strength. (*Id.* at 21-22.) In evaluating Plaintiff's complaints that her medication impaired her ability to work, the ALJ rejected this notion because the January 2018 records indicated Plaintiff denied decreased concentration and she also denied medication side effects in October 2018. (*Id.* at 23 (citing Exs. 16F, 17F).) The ALJ gave significant weight to the Administration's state agency medical consultants, who based their opinion on an in-depth review of the longitudinal record. (*Id.*)

Also relevant to this appeal, the ALJ found Dr. Hundle's medical evaluations unpersuasive. (*Id.*) For one, the ALJ noted that Dr. Hundle had sporadic and limited treatment of Plaintiff before reaching his conclusion that Plaintiff was capable of less-than-sedentary exertion. (*Id.*) Further, the ALJ found the record contradicted many of Dr. Hundle's opinions, which the ALJ noted were memorialized in scant treatment records. (*Id.*) As to the content of Dr. Hundle's medical opinions, the ALJ stressed that they were largely based on Plaintiff's subjective complaints. (*Id.*) Finally, the ALJ found Dr. Hundle unpersuasive because his opinions were contradicted by the state agency medical consultants. (*Id.*)

## II.  LEGAL STANDARD

### A.  Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Said another way, substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not 'weigh the evidence or substitute [its own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Even if the court would have decided differently, it is bound by the Administrative Law Judge's ("ALJ") decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

### B. Establishing Eligibility for Supplemental Security Income

To be eligible for supplemental security income, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920. For the first step, claimants must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 416.920(a)(4)(i). For the second step, claimants must establish that they suffer from a "severe . . . impairment" or "combination of impairments." *Id.* § 416.920(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that claimants provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If claimants demonstrate that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to social security income benefits. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether claimants' RFC permit them to resume previous employment. *Id.* § 416.920(a)(4)(iv). If claimants' RFC permits previous employment, claimants are not "disabled" and not entitled to social security income benefits. *Id.* § 416.920(f). The burden

of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that claimants can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *Id.* If the Commissioner cannot satisfy this burden, claimants will receive social security income benefits. 20 C.F.R. § 416.920(g).

### III. DISCUSSION

Plaintiff appeals the Administration's Appeals Council's affirmance of the ALJ's decision raising three alleged errors. (*See generally* Pl.'s Appeals Br., ECF No. 13.) The core of Plaintiff's argument is that the ALJ erred at steps two and four, and by discounting Dr. Hundle's medical opinions. The Court considers each issue in turn.

#### A. The ALJ Did Not Err in Finding Plaintiff's Headaches, Shortness of Breath, and Anxiety Non-Severe at Step Two.

First, Plaintiff challenges the ALJ's step-two findings that her headaches, shortness of breath, and anxiety are non-severe. (Pl.'s Appeal Br. 24-26.) In doing so, Plaintiff highlights Dr. Hundle's medical opinion that these impairments would limit her ability to work, require medication that limits work performance, and necessitates Plaintiff being off task for a portion of the workday. (*Id.* at 25-26.) Considering that the step-two inquiry is a "*de minimis* screening device to dispose of groundless claims," Plaintiff avers that the ALJ erred in failing to find these impairments impacted her ability to work. (*Id.* at 25 (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003)).) Further, Plaintiff argues that even if the ALJ made the correct determination at step two, she still had to consider Plaintiff's non-severe impairments in calculating the RFC, which Plaintiff alleges the ALJ did not do. (*Id.* at 26.) Like any other finding of fact, the Court examines the ALJ's severity findings by determining whether they are supported by substantial evidence in the record. *See Brown v. Colvin*, No. 16-1123, 2017 WL 6606903, at *6

(M.D. Pa. Dec. 27, 2017) ("While we acknowledge that a claimant's burden at [s]tep [two] is not an exacting one, with respect to this question we are also mindful of the fact that our review of the ALJ's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence in the record."). After a thorough review of the record, the Court concludes that substantial evidence supports the ALJ's step-two non-severity determination.

As a preliminary matter, the ALJ did not find Plaintiff credible, which undermined many of her self-reported impairments. (AR 23 (finding Plaintiff "exaggerated" her symptoms and was "not forthcoming").) The ALJ therefore examined each of Plaintiff's listed impairments with an eye towards the medical record and objective evidence that may support her allegations. (*Id.* at 18-19.) What's more, the ALJ discussed each impairment separately and detailed her findings while applying the correct criteria for assessing Plaintiff's anxiety. (*Id.* (applying paragraph B criteria and evaluating all four areas of mental functioning).) Thus, Plaintiff cannot allege that the ALJ failed to consider any of her reported impairments; instead, given the Court's limited review, she must show that substantial evidence does not support the ALJ's findings as to headaches, shortness of breath, and anxiety. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (noting the ALJ's responsibility to explain findings for meaningful judicial review of substantial evidence).

Starting with headaches, the ALJ reviewed the medical record and found that Plaintiff repeatedly denied headaches in April 2016 and then again in January 2018. (AR 18 (citing Exs. 15F, 17F).) In addition, Plaintiff's 2016 head computed tomography scan "revealed normality." (*Id.* (citing Ex. 17F).) But just a few months after the January 2018 medical visit, Plaintiff changed course and alleged that she suffered from migraine headaches for 25 years. (*Id.*) Given the stark inconsistencies, substantial evidence supports the ALJ's conclusion that Plaintiff's "intermittent complaints" alone are not supported by the treatment record and are therefore non-severe. (*Id.*)

9

Moreover, the ALJ notes elsewhere in her written decision that Plaintiff worked until 2012 when she was discharged for non-medical reasons and later went on to obtain her doctorate degree in 2016. (*Id.* at 21.) Substantial evidence supports the ALJ's decision, therefore, to find that even if Plaintiff had headaches dating back decades, they were not "a severe medically determinable impairment." (*Id.*)

Next, as to shortness of breath, the ALJ concluded that the symptom's recent onset and lack of medical diagnosis warranted a conclusion of non-severity. (*Id.*) To this point, the ALJ noted that the record did not support a determination that shortness of breath would continue long term and that Plaintiff was prescribed supplemental oxygen to treat this symptom. (*Id.*) Indeed, the only evidence supporting that shortness of breath impacted Plaintiff's ability to work came from her own testimony and Dr. Hundle.[4] (*Id.*) And contrary to Plaintiff's assertion that the ALJ failed to consider any of her non-severe impairments in the RFC calculation (Pl.'s Appeal Br. 26), the ALJ's written decision unambiguously factors shortness of breath into Plaintiff's capabilities by limiting her to "light exertion" only. (*Id.*) Substantial evidence supports the ALJ's determination.

Last, the ALJ found that Plaintiff's anxiety "symptoms appear to have been sporadically reported" and "the record fails to document any significant associated treatment." (AR 19.) The ALJ noted that Plaintiff occasionally mentioned her anxiety during certain medical appointments for her spinal injury. (*Id.*) Nonetheless, the ALJ still gave specific reasons as to why she found no limitation or a mild limitation for each of the "paragraph B" criteria. (*Id.* (citing 20 C.F.R. Part 404, Subpart P, Appendix 1); *see Miller v. Saul*, No. 19-1775, 2020 WL 7129310, at *8 (M.D. Pa. Dec. 4, 2020).) The ALJ found no limitation as to understanding, remembering, or applying

---

[4] As discussed *supra*, the ALJ did not find Plaintiff credible and discounted her testimony that was not otherwise supported by objective medical evidence. (*E.g.*, AR 23.) Nor did the ALJ find Dr. Hundle persuasive for reasons discussed *infra*.

10

information based on the record and Plaintiff's ability to "secure a graduate degree after her alleged onset date." (*Id.*) Similarly, the ALJ found no limitation as to Plaintiff's ability to interact with others because the record lacked evidence that she had conflicts with people. (*Id.*) Again finding no limitation, as to the third functional area of concentrating, persisting, or maintaining pace, the ALJ determined that Plaintiff's self-reported difficulties are not clearly documented, and she fails to distinguish whether the medication or impairment are the cause. (*Id.*) Indeed, Plaintiff denied an inability to concentrate on numerous occasions.[5] (AR 23.) For the fourth functional area, the ALJ found a mild limitation as to Plaintiff's ability to manage herself, reasoning that her ongoing "lumbar pain may result in some difficulties managing her mood." (*Id.*) The Court finds that there is substantial evidence to support the ALJ's finding that Plaintiff's anxiety is non-severe.

In sum, the Court finds the ALJ's step-two conclusions are supported by substantial evidence and, further, that the ALJ considered the non-severe impairments as part of the RFC calculation. Although Plaintiff may wish for the Court to reweigh the evidence, that is not the correct standard on appeal. *See, e.g.*, *Martinez v. Astrue*, No. 10-5863, 2011 WL 4974445, at *6 (E.D. Pa. Oct. 19, 2011) (Noting that "the [c]ourt's scope of review is 'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.' Whether the [c]ourt would have reached a different conclusion is of no moment." (quoting *Gilmore v. Barnhart*, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005))).

---

[5] Plaintiff's argument that the ALJ ignored her mental health impairments in calculating RFC again falls short and is patently contradicted by the ALJ's written decision. (Pl.'s Appeal Br. 26.) As part of the ALJ's RFC calculation, she noted that Plaintiff reported an "inability to concentrate" and "pervasive medication side effects" but found the complaints "inconsistent with January 2018 records that noted denial of decreased concentration . . . and her October 2018 denial of medication side effects." (*Id.* at 23 (citing Exs. 16F, 17F).)

11

**B.     The ALJ Did Not Commit Harmful Error in Misreading How Far Plaintiff Can Walk.**

Next, Plaintiff contends that the ALJ committed reversable error because she mistakenly noted that Plaintiff can walk one or two miles without rest when Plaintiff testified that she could walk only .1 to .2 miles. (Pl.'s Appeal Br. 20-24.) To be sure, Plaintiff argues that this error is severe because "the ALJ relies[] almost exclusively on [this] one misread statement to find Plaintiff is capable of a full range of light work." (*Id.* at 22.) Entangled with this alleged error, Plaintiff trudges forward to make a broader attack on the RFC in claiming that the medical record supports a finding that Plaintiff can perform only sedentary work. (Pl.'s Appeal Br. 23.)

The Court disagrees that the RFC is not supported by substantial evidence. Even though the Commissioner concedes that the ALJ erred, Plaintiff must show that the error was harmful, meaning it impacted the ALJ's RFC determination. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 336 (6th Cir. 2007) (affirming notwithstanding that ALJ misread one fact in the record because the error was harmless). That is, misinterpreting Plaintiff's statement of activities she can perform "amounts to nothing more than harmless error where, as here, [the ALJ's] credibility assessment is amply supported by other substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 82 (N.D.N.Y. 2005) (finding harmless the ALJ's misreading of the record regarding plaintiff's ability to perform activities).

*First*, the ALJ's reliance on Plaintiff's walking capabilities (and the evidence the ALJ is charged with misinterpreting) is derived from Plaintiff's own subjective testimony. (*See* Pl.'s Appeal Br. 24 ("The ALJ's reliance on this mistaken reading of the *claimant's own statement* is clear error." (emphasis added)). As discussed above, the ALJ found Plaintiff not forthcoming and her statements exaggerated. (AR 23.) Although the ALJ must give Plaintiff's subjective complaints serious consideration, inconsistencies between the medical record and Plaintiff's self-reported

12

impairments may be "strong evidence weighing against Plaintiff's credibility." *McLaughlin v. Astrue*, No. 11-687, 2011 WL 7472435, at *13 (W.D. Pa. Dec. 22, 2011) (finding no error where "the ALJ's decision to accord [plaintiff's] subjective complaints less weight was properly supported"). On appeal, Plaintiff is unable to show that even if the ALJ correctly noted how far Plaintiff says she could walk, that the ALJ would have believed her. Indeed, the ALJ spends significant effort going through a timeline of Plaintiff's treatment and rehabilitation for her spinal injuries that demonstrated she retained muscular strength and her symptoms improved over time. (AR 20-23.) The misalignment between the medical record and Plaintiff's testimony reveals why the ALJ ultimately found her allegations to be inconsistent with the medical evidence. (AR 23.) It is likely the ALJ would have discounted Plaintiff's assertion that she can hardly walk without resting.

*Second*, the Court disagrees with Plaintiff that the ALJ "almost exclusively" relied on Plaintiff's walking ability in determining that she can perform light work. (Pl.'s Appeal Br. 22.) A plain reading of the ALJ's written decision undercuts this theory. (*See* AR 20-24.) The ALJ, in analyzing Plaintiff's RFC, made one reference to her self-reported ability to walk. (*Id.* at 20 ("While she could walk two miles before needing to rest, she denied lifting any objects.").) Elsewhere, the written decision provides a detailed timeline of Plaintiff's medical history, physician examinations, treatment plans, and medical testing from 2016 to 2018. (*Id.* at 20-23.) Nothing in the written decision suggests that the ALJ found Plaintiff's testimony on how far she could walk dispositive in calculating her RFC.

*Third*, as to the RFC determination generally, the Court finds substantial evidence that Plaintiff can perform light work. The ALJ relied on (1) Plaintiff's testimony before the ALJ (*id.* at 21 (Plaintiff testified that "[b]ranch block injections have reportedly relieved her radicular

symptoms"), 22 (Plaintiff pursued her Ph.D. in nursing after alleged onset date)), (2) Plaintiff's statements to her physicians (*e.g., id.* at 18 (Plaintiff denied headaches and several months later reported suffering from headaches for 25 years)), (3) medical evaluations (*e.g., id.* at 21 ("Lumbar range of motion was decreased, but her gait remained normal as did her extremity strength.")), (4) medical testing (*e.g., id.* ("a lumbar CT demonstrated no compression fractures, but degenerative joint disease was present . . . with notable stenosis.") (citing Ex. 15F)), and (5) treatment (*e.g.*, *id.* at 22 ("In November, she reported temporary relief from physical therapy with full strength and sensation, normal gait, mild lumbar tenderness, and negative straight leg raising." (citing Ex. 16F))). The ALJ found persuasive Plaintiff's favorable clinical findings as to her normal gait and strength in her lower extremities, while also noting that Plaintiff's treatment since 2016 has shown positive improvements in her functioning and pain management. (*Id.* at 21-22.) Moreover, the ALJ gave "significant weight" to the state agency medical consultants' opinions based on their experience and review of the longitudinal records. (*Id.* at 23.)

The Court therefore finds that "substantial evidence supports the ALJ's ultimate determination" that Plaintiff can do light work because she "pointed to the medical evidence" and parts of the record that support such a finding.[6] *Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 60 (3d Cir. 2017).

### C. The ALJ Did Not Err in Finding Dr. Hundle's Medical Opinions Unpersuasive.

Third, Plaintiff alleges that the ALJ erred in her treatment of Dr. Hundle's medical opinions. (Pl.'s Appeal Br. 26-30.) Specifically, Plaintiff contends that the ALJ's written decision

---

[6] The Court disagrees with Plaintiff that the ALJ failed to consider any of her non-severe impairments in calculating RFC. In any event, even if true, "the ALJ was entitled to not include 'minimal or negligible' deficiencies in the RFC." *Makowski v. Comm'r of Soc. Sec.*, No. 16-1656, 2017 WL 3151243, at *7 (D.N.J. July 24, 2017) (citation omitted).

14

was conclusory and dismissed Dr. Hundle's opinions erroneously, particularly given that he was a treating physician. (*Id.* at 28.) According to Plaintiff, the ALJ "failed to point to a significant piece of conflicting evidence" in limiting the weight of Dr. Hundle's opinions. (*Id.* at 29.) The Court disagrees.

The ALJ's review of Dr. Hundle's medical opinions is as follows:

> I have given little weight to the opinions of Dr. Hundle (Exhibits 13F, 18F) who, based upon a limited and sporadic treatment history, opined limitation to less than sedentary exertion. This opinion is contradicted by the State agency medical consultants, whose opinions were based upon a review of a significant portion of the longitudinal record. Dr. Hundle's opinions were not clearly supported by objective findings and instead appear to have been largely based upon the claimant's subjective complaints. In fact, the record appears to contain little to no treatment records from Dr. Hundle despite being referenced as her primary care physician.

(AR 23.) Further, even a treating source is not entitled to heightened significance if the record and objective evidence contradicts that source's opinion. *Johnson v. Comm'r of Soc.Sec.*, 529 F.3d 198, 202 (3d Cir. 2008) ("[T]reating source's opinion is entitled to controlling weight only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record. . . .'" (alteration in original) (quoting *Fargnoli*, 247 F.3d at 43)). Put differently, "contradictory medical evidence" can defeat a treating source's opinion. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988).

A full reading of the written decision lends credence to the ALJ's findings regarding Dr. Hundle. *Sejeck v. Berryhill*, No. 18-16734, 2019 WL 7207506, at *7 (D.N.J. Dec. 27, 2019) ("[W]hile an ALJ must consider the opinions of treating physicians, [t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ where it is not well supported or there is contradictory evidence." (alteration in original) (internal quotation marks and citation omitted)). As a preliminary matter, the ALJ's conclusion that Plaintiff exaggerated her symptoms carries over

15

to Dr. Hundle's recitation of Plaintiff's subjective complaints. (AR 23.) "An ALJ is entitled to give less weight to the opinion of a treating doctor where the doctor's opinion is based largely on the plaintiff's subjective complaints rather than on objective medical evidence." *Rosa v. Astrue*, 708 F. Supp. 2d 941, 950 (E.D. Mo. 2010). Indeed, the ALJ noted that Dr. Hundle's medical assessments contained very few independent medical assessments rather than survey-like questions for which Plaintiff supplied answers. (AR 23 (citing, among other records, Ex. 18F).) If a treating physician's "continu[ed] observation of the patient's condition over a prolonged period of time" warrants "great weight," the ALJ appropriately observed that the record "contain[ed] little to no treatment records" from Dr. Hundle. *Morales*, 225 F.3d at 317. Further, the ALJ may properly discount medical opinions lacking objective support. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202 (3d Cir. 2008) (noting that a treating source's opinion without medically acceptable clinical or laboratory diagnostic support that is inconsistent with other substantial evidence may be assigned lesser weight).

Putting aside the dearth of Dr. Hundle's treatment records, the ALJ found his medical opinions were unsupported and inconsistent with other evidence in the record. For example, the ALJ compared Dr. Hundle's medical opinions with that of the state agency consultants and gave greater weight to the latter.[7] *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating

---

[7] Plaintiff alleges that the ALJ committed reversable error in finding Plaintiff slightly less limited than the state agency consultants. (Pl.'s Appeal Reply Br. 6, ECF No. 16.) But the ALJ explained that, in examining the medical evidence, Plaintiff's normal gait, in addition to a back brace, allowed her the ambulatory capabilities to perform light exertion. (AR 23 (citing Exs. 1A, 3A).) Indeed, the ALJ's slight deviation with the state agency consultants boils down to Plaintiff's ability to stand or walk six hours in the workday compared to four. (*Compare id.* at 23 (ambulatory capabilities of light exertion, which requires six hours of standing or walking), *with id.* at 65 (stand and/or walk for a total of four hours).) The Court will not reweigh the evidence or "substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Instead, the Court finds the ALJ met the "not high" burden of showing substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" (quoting *Plummer*, 186 F.3d at 429)). Significantly, the ALJ rejected Dr. Hundle's medical opinions because they were inconsistent with the longitudinal record, which the ALJ summarized at length elsewhere in her written opinion. (*See* AR 20-23.) The Court is therefore satisfied that the ALJ did not "reject [Dr. Hundle's] evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Rather, substantial evidence supports the ALJ's decision to give little weight to Dr. Hundle's medical assessment comprised largely of Plaintiff's self-reported complaints. *See id.* (citing *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)). To be sure, the ALJ's detailed review of Plaintiff's medical history buttresses her evaluation of Dr. Hundle's report.

The Court finds substantial evidence supports the ALJ's decision to disregard Dr. Hundle's medical opinions.

## IV. CONCLUSION

Having reviewed the Record as a whole, the Court affirms the affirmance of the ALJ's decision by the Administration's Appeals Council. The Court will issue an order consistent with this Memorandum Opinion.

Date: May 31, 2022

s/ Zahid N. Quraishi  
**ZAHID N. QURAISHI**  
**UNITED STATES DISTRICT JUDGE**